The Circus Penguin Good afternoon. May it please the court, I'm Alan Goulding. I'm here on behalf of Allstate Insurance Company. I'd like to reserve three minutes for rebuttal, if I may. Fine. We are asking this court to grant a new trial on this breach of contract action, and we are citing two principal reasons for that relief. The first is that we contend the trial court erred when it granted, as a matter of law, a ruling that the exclusion in the Allstate insurance policy did not apply in this case. It was the principal defense to the breach of contract action, and we contend that the district court erred when it ruled, as a matter of law, that that did not apply. Our second basis is the fact that there was an ex parte conversation that occurred during the trial. There was no record of it. It was on matters that were at issue, and it occurred at a time when dispositive motions were being held by the court over the weekend so that they could decide those. But you didn't object to that or seek recusal at that time, right? When it was disclosed to trial counsel, there was no objection. There was prompt disclosure by the judge. It strikes me as a little bit have your cake and eat it, too. You didn't seek to remove the judge after the judge disclosed it. You took your shot. You didn't like the result. Now you want another shot at it. Wouldn't it be an appropriate time if you really felt it was problematic to have sought your remedy or at least lodged your objection at that time before you found out whether you won the case? Yes, I think you could have at that moment when Judge Green disclosed the fact that there was a conversation, there was an opportunity if counsel had chosen to, to move for either recusal or a mistrial. But let me address that if I may. And I want to put a predicate before I get to that issue. What we do know, as was disclosed by the trial judge, is that several things occurred that were simply inappropriate. There was an ex parte conversation initiated by counsel. Apparently, Judge Green was surprised by this. And he says so and he discloses that. We know that it did occur off the record that there were matters of merit discussed by the judge and opposing counsel. And we do know, given the chronology of events, that it occurred when a dispositive motion was sitting before the court. Those are the predicates necessary for the judge himself to make the decision that he needs to recuse himself. If you look at the canon, canon three, obviously ex parte communications are prohibited. This is simple information that any attorney should be aware of. At what stage of the proceeding did this occur? This was about the fourth or fifth day into the trial. Which lasted how long? I believe there were two additional days after the communication occurred. Is this your strongest argument for reversal? I thought that your argument for reversal was that the court had taken from the jury facts that the jury should have considered with respect to the defense that you projected. I thought that was your big point. Well, thank you. I would agree with you, Your Honor. I was addressing the concerns of Judge Hardiman. I thought that was your big point. Am I right? Well, I would agree with you that our concern involves the trial judge's decision to basically act as a jury in parts of this case. He took it away from the jury. He did. Absolutely. We agree with that. Isn't that enough for you? I would hope so. I'm responding to Judge Hardiman's inquiry about whether there should have been a motion. And my response to that is there could have been. But given what occurred and given the canon three, there is a responsibility on the trial judge in the event that there's an ex parte communication and there may be an appearance of partiality to recuse himself.  I don't want to belabor this point because I agree with Judge Garth about the hierarchy of your two arguments. But wouldn't it set a terrible, terrible precedent to allow lawyers to know what you knew or your trial? I don't recall if you tried the case or not. I did not. Wouldn't it set a terrible precedent if trial lawyers were armed with this information and were able to just put it in their hip pocket, not do anything about it, not object, not seek a mistrial or recusal, see how it goes, and if it doesn't go well, then you come forward? Wouldn't we be sending the exactly wrong message to the bar in respect to these matters? What message are we sending if we don't enforce the recusal order? The message we're sending is that in the adversary process that is a trial, lawyers are required to object when they see there's a problem. I would agree with that, Your Honor, in 99 percent of the cases. And the classic example is that someone is offering a hearsay testimony, you better jump up and yell objection or it's going to come in and it's too late. Or if something occurs in the course of a trial and you want to object, you better do it then or the judge is not going to be able to cure it. There was no cure for this. Two jurors overheard talking about the case in the hall. You've got to bring that to the trial judge and say, Judge, you need to pull the plug on this case. You can't say, Oh, boy, we've got something now and if we don't win the case, now we're going to make a big issue out of it. That's because you have to give the judge the opportunity to cure. In this case, what would Ms. Stein, who was the trial attorney, have brought to the court's attention to cure the problem? Nothing. She was the excluded party from the conversation. The judge knew what took place. It was not a mere, Your Honor, I'd like to talk to you about your rulings. There was a full conversation occurred. She does not have actual knowledge of what took place in that conversation. There was parts of it disclosed to her. The motion that you are requiring. I've taken up too much of your time on this issue. Let's go to the meat of the case. Sure. And I agree with you, Judge Garth. Our principal argument involves the trial court's decision to, in essence, function as the jury in the principal defense in the case. That is the exclusion. What did Judge Green take away from the jury? What was the issue? What should have gone to the jury was whether or not all state had proven, with sufficient evidence, that the exclusion in the policy, it has two prongs, whether or not it applied to the facts of this case. The exclusion involves whether the premises was occupied and whether reasonable care had been taken to maintain the premise. All state's requirement was to prove both elements. If they failed on one of them, they failed to prove their exclusion. The record is replete with the fact that there was a great deal of testimony regarding the issue of occupancy. And if I can take that one first, where we contend Judge Green erred was when he ruled on the issue of occupancy, he employed the subjective standard. His response or his comment was, isn't it just enough that the decedent, who was not there at the trial, said when she was alive, I intended to go back. And that was his basis for concluding that the occupancy standard had not been met by all state. That's wrong. The Kinnear case makes it clear that that is an objective standard  to determine if the premises was occupied. In fact, this dwelling was not occupied for more than seven months. The matter was the issue of coverage. Isn't it common for judges to interpret contract provisions as a matter of law? That is correct, Your Honor. You don't give a contract to a jury and say please interpret it. I agree with you. So is that what Judge Green was doing? No. No. He was overstepping his bounds. If the issue, and there certainly was an issue between the parties as to what occupancy meant, the judge had the discretion and certainly had the obligation to sort out what occupancy meant in this policy. Then to give that definition to the jury. The jury then had one other step. If one party or the other hadn't presented credible evidence on the issue of occupancy, then he could act. But in this case, that's not so. There's a great deal of testimony from both parties, which if believed would sustain their burden. I thought his holding wasn't on occupancy. I thought he ruled against you by finding as a matter of law that reasonable care had been taken to maintain the home. He found both. But there is a passage in there, and you will see it in our brief, where he makes the comment that no reasonable jury could find coverage, and he goes on to say that with respect to the issue of occupancy, the mere fact that Mrs. Cessaro had said before she passed that she intended to return was enough. And that's simply the wrong standard. If you make that decision, you don't really make the other one. That's correct. You don't need to go on, but he did. And you're correct. He did then go on to say that based on what he observed, reasonable care had been taken by the party to maintain heat in the house. There was certainly evidence that care was taken. They had a contract with Hollywood. They viewed the house. Peter Cessaro went to the home. That was a testimony. Unrebutted testimony. Mr. Hannon, the neighbor, testified he saw Peter Cessaro in the home. Correct. What evidence do you have? There was one other fact that the Judge Green mentioned, and that is that she had had someone do maintenance on the thermostats. Right. But in contrast to that, there was evidence that there had been almost no usage of the fuel during that winter, that the fuel tank was virtually full. There was six inches of water in the fuel tank. The furnace could not have operated. There was testimony that the maintenance contract, where someone comes out and checks the furnace, was not used that year. No one had checked on the furnaces. There was also testimony that the thermostat that the family members claimed they were using was an analog thermostat, didn't work. So you can weigh the evidence if you choose to. So if this were summary judgment, you'd say, okay, maybe the weight of the evidence is they tried, but query whether it was reasonable. Precisely. This is the particular point. I'm sorry. I don't mean to speak over you. For me, here's the tough question. Pasqualina Cessaro is an elderly incapacitated woman. Yes. She delegates the duty of care to the home to her son. That's correct. Why can't that be deemed as a matter of law to be reasonable? By simply delegating the duty? I think there's an obligation. She's incapacitated. She's elderly. What more is she supposed to do? Is she supposed to have a team of six contractors checking on one another? She delegates that duty to her son and says, take care of the house. Make sure it's heated, et cetera. But if he doesn't do that, then the effort to maintain has not occurred. It's not simply enough for you to say to your son, daughter, or anyone you choose, you take care of it. That's not maintenance of the property. There was an obligation at his point when he became her guardian to actually perform the acts. Not to say that I did or pretend that you do them, but to actually engage in the maintenance of the property. There's certainly an argument that he didn't. I will concede that if you believe the evidence presented by the plaintiff, you could conclude that reasonable care had been taken. I will also argue that if you accept the testimony offered by Allstate, you could conclude that reasonable care had not been taken. That's the perfect example of what goes to the jury. As the trial judge, you give the instruction on what reasonable care is. You do not weigh the evidence and find credibility on the issue of who the witnesses are and whether they're credible or not. That's not your province. You give that to the jury. That's why they're sitting there. Thank you. We'll get you back on rebuttal. Mr. Ponziano. Thank you, Your Honor. May it please the Court, Robert Ponziano on behalf of Plaintiff Cicero. Your Honor, if I may, I'll take some exceptions to some of the allegations made by defense counsel. I'll start with this interpretation of the judge as defining that he ruled both on occupancy and reasonable care was taken. If you carefully read what the judge said during his Rule 50 motions, where both sides moved for a judgment as a matter of law, he said that there was an intent to occupy the property, to come back to the property. But he does not go into any specific detail on what she planned on doing. Where he does go into detail is when he says there was also evidence of intent to take reasonable care of the property. And that's where Judge Green expands on exactly what she did that showed that she maintained reasonable care to take care of the property. He talks about Mr. Ziegler from Hollywood Oil who was in- That is, it could not be disputed in any way. First of all, it wasn't stipulated, was it? It was not stipulated. It was not agreed to. Well, the evidence that Judge Green... Was it agreed to that it was reasonable for her not to have taken care of the pipes? It was not agreed to by... It was not stipulated or agreed to by defense that she acted reasonably to maintain the heat. The provision of the policy says take reasonable action, take reasonable care to maintain the heat in the property. Judge Green based his decision on the fact that the defendant's own witness, Mr. Ziegler from Hollywood Oil, said... Isn't that for the jury? Isn't that why we have juries to determine whether or not it was or was not reasonable? I mean, there was evidence on both sides. You may be right, and Judge Green may have been right, but can we countenance taking facts which bear on the issue,  Well, Judge Green allowed the jury to determine whether there was coverage. Whether there was coverage for this loss. Judge Green just determined that the occurrence was covered, and the occurrence meaning that the broken pipe was not excluded under the policy. He still allowed... He did not take out of the control of the jury as to whether or not this would be a covered loss. But that doesn't prove that he was correct in taking away their ability to argue to the jury that the exclusion applied. Isn't there evidence in the record, the bullet points in your adversary's brief, to indicate that unreasonable care was taken to maintain the home? Or perhaps, you know, he wanted to... His trial counsel wanted to argue to the jury, Don't believe Peter Cicero. Don't believe the neighbor, Mr. Hannon. Because when they tell you they went to that house every week in the dead of winter, they would have noticed that it was 35 degrees. And we are confident it was 35 degrees because none of the oil was utilized. How could the house be heated when none of the oil was depleted? Those are the arguments they wanted to make, presumably. Well, they did make those arguments. To the jury. To the jury they made those arguments because they were able to maintain their defense. Their defense was misrepresentations and fraud and concealment. So these arguments were made to the jury. But the best arrow in their quiver was the exclusion. And that was taken away from them by the judge. Well, the judge, as was mentioned earlier, this is a first-party insurance contract case. And it's a matter of law as to the interpretation of the insurance policy. And Judge Green interpreted the insurance policy as such. The reasonable care standard was met by the fact that the evidence was established by defense's own witnesses that Hollywood Oil came to the house and did actually add oil to the tank and actually inspected the thermostats. But if nobody turns the thermostat on, what good is the oil in the tank? Well, there was no evidence that the thermostat wasn't on. In fact, Mr. Ziegler testified that the thermostat. Well, the evidence could be that the pipe broke. That was the evidence. The pipe did break. And didn't some of your client's relations testify that they were operating the incorrect thermostat? There was some confusion about the analog and the digital thermostat. There was some confusion about that, yes. But it was brought out that the thermostat was working properly. The thermostat that was controlling the heat was working. It was not off. It seems to me your better argument is that she did all she could. Mrs. Cicero delegated this duty, but I don't know. I don't see any case law in either brief to indicate whether that's enough. If she appoints an appropriate person to take care of this for her, could that satisfy her duty? She's the insured, not Peter. Correct. And she has the duty to take reasonable care. And I believe that's what Judge Green determined. Are you arguing that appointing Peter was enough? You know, having Hollywood signed up to deliver the oil, having Peter as a caretaker for the house, is there any case law to say that she's discharged her duty? I do not have case law, but the policy does not specifically say what has to be done for reasonable care. I think that's one of the points that has to be made. The policy itself is very broad when it says reasonable care must be taken. It doesn't set forth steps that must be done to establish reasonable care. That's left to the judge to determine as a trier of law. I was about to ask you, isn't that precisely what a jury should decide on the basis of competing contentions? I believe that the judge should make that decision. That that is a decision to interpret the insurance policy, to interpret the language of the insurance policy, when the language says as long as reasonable care is taken to maintain the heat, then there will be coverage. Well, now wait a minute. As I understood it, at least one issue that was involved was what caused the pipe to break. Your friend claims that the pipe broke because it had been freezing and that precautions hadn't been taken to prevent it from freezing. You, on the other hand, had witnesses that claimed that the pipe was broken by external causes. Isn't that precisely what a jury should find? They should make the determination, was it frozen? Was it broken? Did somebody take a pickaxe to it or any of the sort? But isn't that a jury? How could a judge decide that? I agree. The jury did have the opportunity to decide that. That part, that was not taken out of the jury's hands. The jury determined whether or not the defenses, that the defense was Did the jury determine whether it was frozen or not? Did they make that finding? The jury had the opportunity to determine Did they make There wasn't a jury, there was not a jury interrogatory that said was the pipe frozen, if that's your question. No. The jury was able to say was it defenses that the defense has presented? Were there misrepresentations? Was there fraud? Was there concealment? If such, then don't go any further. And the arguments made throughout the case was that there were misrepresentations, that the loss occurred at an earlier time than we said it occurred, that the pipe froze as opposed to breaking from other avenues. So the jury had the opportunity to determine this, without having a specific answer to make on the interrogatory. They didn't determine the occupancy question, did they? No. And again, if I may just expound on it slightly. The court did not rule that there was occupancy. There was arguments made by both sides. Our side was that there was occupancy. We met the conditions of occupancy because there was an intent to return back to the home. Defense argued that that's not good enough because she was away for more than six months. But the policy itself doesn't spell out a specific time period. The Kenner case discusses the fact that the intent will not be considered, but it's only because the policy itself had a limitation of ten days. Within that ten-day envelope, you would be considered okay if it's unoccupied. In our case, the policy was brought out during my motion as well, that the policy does not discuss a particular time period. But isn't the matter of intent an issue that is almost always a fact issue? In other words, it's resolved on the basis of surrounding circumstances? The intent as far as occupancy is concerned? Return back to the dwelling? Well, again, Judge Green, I believe Judge Green, if you read carefully what he said, he did not rule that there was occupancy. He said that there was an intent to return home, but then he quickly went to the next step and he said, and there was an intent to maintain, to take reasonable care to maintain the heat. And then he expounded on the reasonable care to maintain the heat and spent no time on his discussion on occupancy. And I think what he was doing, because this decision was made soon after our arguments for occupancy, he felt that he didn't have to rule on occupancy because the policy, if you show there's reasonable care to maintain the heat took place, he doesn't have to rule on occupancy and the majority wouldn't have to rule on occupancy. Isn't that only required where the dwelling is unoccupied? It's not necessary. If there's a finding that the reasonable care was taken to maintain the heat, it's irrelevant whether the property was vacant or not or occupied or not. If it's occupied, you don't have to get to that level. If it's unoccupied, you'd meet the burden to prevent this exclusion because it shows that reasonable care has been taken. You would have liked to have ruled on both of them because then you'd have two independent arguments for affirmance. What I understand you're saying is that he didn't really make a formal ruling on the first. He rested on the latter. If we disagree on reasonable care, it has to be remanded. Yes. Thank you. Thank you very much. Mr. Paziano, thank you. Mr. Golden? I'll be brief, Your Honor. With respect to the contention that the jury did have a chance to make decisions about coverage, I think that's a little bit misleading. There were two defenses offered by Allstate. One was that the exclusion applied, which would not have allowed this matter to be covered. The other is that, and it's a separate exclusion, that there may have been fraud or misrepresentation in presenting this claim. The first defense was taken away by the judge, by his rulings. The second defense, he allowed the jury to consider. But as we well know, to prove fraud, you need to prove with clear and convincing evidence that there was deceit or some deception. The other defense, which is the one that was the principal defense in the case, is that this is simply not covered because the home wasn't occupied and reasonable care wasn't taken. That the jury never got to decide. That's the error we contend took place. Reasonable care is not for the judge to decide. That's Mr. Paziano's contention. That's a jury issue. It's always a jury issue. The judge does get to interpret the policy, but he doesn't get to interpret the evidence. That's what he did here. He weighed the evidence. He considered the credibility of the witnesses. That's not his role. And that was something the jury should have had an opportunity to do. They didn't. And we believe that the proper remedy for that is to grant a new trial. Thank you. Thank you, Mr. Golding. And thank you, Mr. Paziano. Thank you both. We greatly appreciate your arguments. We'll take the case under advisement. Thank you.